UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Case No. 13-44757

    Kevin and Sarah Jordahl,                        Chapter 13

        Debtors.

## MEMORANDUM AND ORDER

At Minneapolis, Minnesota, August 27, 2014.

The court held a hearing on the chapter 13 trustee's motion objecting to confirmation of chapter 13 plan on June 19, 2014.

Matthew Tande appeared on behalf of the debtors.  Karl Johnson appeared on behalf of the chapter 13 trustee, Gregory Burrell.

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), Fed. R. Bankr. P. 3015 and 9014, and Local Rules 3015-3, 3020-1, and 3020-3.

The court grants the trustee's motion and denies confirmation of the plan because the plan violates 11 U.S.C. § 1322(b)(1).

### FACTS

The debtors filed for chapter 7 protection on September 30, 2013.  The United States trustee filed a motion to dismiss for abuse under 11 U.S.C. § 707(b).  The debtors reached an agreement with the U.S. trustee and converted the case to one under chapter 13 on January 22, 2014.  The debtors filed their proposed plan the next day.

The proposed plan is a 60-month plan and requires the debtors to pay the chapter 13 trustee $155.00 per month for the first 51 months and then $430.00 per month for the final nine

months, totaling $11,775.00.  Under the proposed plan, the trustee will distribute these funds,

after taking a percentage for the trustee fee, first for payment of attorney's fees estimated at

$1,386.00, and, second to the debtors' non-priority unsecured creditors who timely filed proofs

of claims.  The debtors estimate in the plan that the unsecured claims total $151,948.00 and the

unsecured creditors will receive $9,211.50 over the life of the plan.  Based on these estimates,

the dividend to the unsecured class of creditors is projected to be 6%.[1]

The debtors' schedules list three student loans[2] with a combined balance of $49,045.00.

The monthly payments for these loans total $424.00.  The debtors are current on their payments.

The proposed plan separately classifies the student loan debt and provides that the student loan

payments will be made directly to the lenders.[3]  Over the life of the plan, the debtors will pay a

total of $25,440.00 on the student loans.  Thus, the dividend to the unsecured student loan class

of creditors is projected to be 52%.

## MEMORANDUM

The chapter 13 trustee objects to the debtors' plan because (1) it unfairly discriminates

against the debtors' unsecured creditors, violating 11 U.S.C. § 1322(b)(1), and (2) it provides for

payments of post-petition interest on nondischargeable debt without providing full payment of all

allowed claims, violating 11 U.S.C. § 1322(b)(10).

---

[1] The parties provide differing accounts of the total unsecured claims: the trustee notes that the $151,948.00 amount includes the student loan debt, while the debtors argue that the anticipated deficiency balance of the first mortgage should not be included because the trustee does not pay or allow a claim for deficiency from the foreclosing mortgagee.  Each party asserts a different percentage for the dividend paid to unsecured creditors based on their calculations.  Regardless, the dividend percentage is not less than 6% and not greater than 11.5%.

[2] One of the student loans was co-signed by the debtors' grandmother.  The parties agree that this fact does not matter for the purposes of the court's analysis under 11 U.S.C. § 1322(b).

[3] The debtors refer to these payments as "payments outside of the plan."  They are not.  Rather, they are direct payments to be made to the lender according to the terms of the proposed plan. For the other unsecured debt, the debtor makes a payment to the trustee, who then distributes the funds to the other creditors.  In this district, the courts have allowed direct payments to student loan creditors for many years.

Section 1322(b)(1) allows a plan to "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated . . ." The trustee argues that the proposed plan unfairly discriminates because the holders of the student loan debt will receive repayment of 52% of their claims and the non-priority unsecured creditors will receive 6-11% of their claims over the life of the plan.

The debtors cite 11 U.S.C. § 1322(b)(5) as justification for their separate treatment of the student loan debt. Section 1322(b)(5) states:

> [N]otwithstanding paragraph (2) of this subsection, [a plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The debtors contend that, because the student loans are long-term debts with payments extending beyond the terms of the plan, they are governed by § 1322(b)(5)[4] and can be treated separately from the other unsecured debt without needing to satisfy the unfair discrimination test found in § 1322(b)(1). In the alternative, the debtors assert that their treatment of the non-priority unsecured claims is not unfair discrimination under § 1322(b)(1).

The trustee also argues that the proposed plan violates § 1322(b)(10) because the direct payments on the student loan debt include interest, but the plan does not pay all allowed claims in full. Section 1322(b)(10) allows a plan to

> provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims . . .

---

[4] The court requested the parties to brief whether 11 U.S.C. § 1322(b)(5) requires a debtor to both cure a default and make maintenance payments. The parties agree that a debtor is not required to cure a default in order to make maintenance payments under § 1322(b)(5).

3

The debtors again aver that, because direct payments are allowed under § 1322(b)(5), they do not need to satisfy the requirements of § 1322(b)(10).

**I.      11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1322(b)(1)**

There is a split among courts as to whether the classification of an unsecured debt under § 1322(b)(5) is subject to the unfair discrimination test found in § 1322(b)(1).  Susan E. Hauser, *Separate Classification of Student Loan Debt in Chapter 13*, 32 Am. Bankr. Inst. J. 38 (2013).

The majority of courts have held that section 1322(b)(5) and section 1322(b)(1) must be read in conjunction with each other, requiring any treatment of long-term debt under § 1322(b)(5) to satisfy the unfair discrimination analysis under § 1322(b)(1).  *See In re Labib-Kiyarash*, 271 B.R. 189 (B.A.P. 9th Cir. 2001); *In re Belda*, 315 B.R. 477 (N.D. Ill. 2004); *In re Precise*, 501 B.R. 67 (Bankr. E.D. Pa. 2013); *In re Pracht*, 464 B.R. 486 (Bankr. M.D. Ga. 2012); *In re Zeigafuse*, No. 11-20854, 2012 WL 1155680 (Bankr. D. Wyo. Apr. 5, 2012); *In re Boscaccy*, 442 B.R. 501 (Bankr. N.D. Miss. 2010); *In re Harding*, 423 B.R. 568 (Bankr. S.D. Fla. 2010); *In re Pora*, 353 B.R. 247 (Bankr. N.D. Cal. 2006); *In re Simmons*, 288 B.R. 737 (Bankr. N.D. Tex. 2003); *In re Thibodeau*, 248 B.R. 699 (Bankr. D. Mass. 2000).  These courts have focused on the plain language of the statute by examining the close placement of subsections (b)(1) and (b)(5) and subsection (b)(5)'s specific exclusion of subsection (b)(2), indicating Congress's intent for the two subsections to be read in conjunction with each other.  *In re Harding*, 423 B.R. at 571-72.

The minority of courts have found that subsection (b)(5) acts independently from subsection (b)(1) and excepts long-term debt payments from the unfair discrimination analysis. *See In re Johnson*, 446 B.R. 921 (Bankr. E.D. Wis. 2011); *In re Webb*, 370 B.R. 418 (Bankr. N.D. Ga. 2007); *In re Chandler*, 210 B.R. 898 (Bankr. D.N.H. 1997); *In re Cox*, 186 B.R. 744 (Bankr. N.D. Fla. 1995).  The minority approach reasons that subsection (b)(5) is more specific

than the general subsection (b)(1) and the failure to treat the subsections as independent from

each other would render subsection (b)(5) meaningless. *In re Johnson*, 446 B.R. at 925-26.

Here, the debtors urge the court to adopt the minority approach, relying on *In re Benner*.

156 B.R. 631 (Bankr. D. Minn. 1993). The decision in that case was based on the

nondischargeable nature of the student loan debt. *Id.* The Eighth Circuit has since stated that

"nondischargeability alone does not justify special classification." *In re Copeland*, 742 F.3d

811, 814 (8th Cir. 2014); *In re Groves*, 39 F.3d 212, 216 (8th Cir. 1994). Therefore, the basis for

the *Benner* decision has now been rejected.

The debtors also rely on a sentence found in *Groves* as support for their argument in

favor of the minority approach. 39 F.3d at 215 ("Alternatively, the debtor may treat the student

loan obligation as a long term indebtedness under § 1322(b)(5), curing arrearages within a

reasonable time and thereafter maintaining regular payments."). The debtors' reliance is

misplaced because the Eighth Circuit did not discuss the interaction of §§ 1322(b)(1) and (b)(5)

and the sentence is dicta.

The reasoning of the courts adopting the majority approach is sound. Nothing in

§ 1322(b)(5) excludes the application of § 1322(b)(1). Rather, subsection (b)(5) has specific

language excluding subsection (b)(2).[5] If Congress wanted § 1322(b)(1) to also not apply to

classifications under § 1322(b)(5), it would have said so. Further, reading the two provisions in

conjunction with each other furthers the bankruptcy code's goal of balancing the rights of

creditors to equal treatment with the rights of debtors to a fresh start. *See In re Crawford*, 324

F.3d 539, 542 (7th Cir. 2003) ("Chapter 13 is designed for the protection of creditors as well as

debtors."). This court therefore adopts the majority approach that § 1322(b)(1) applies to debt

classified under § 1322(b)(5). Debtors may use § 1322(b)(5) to cure and maintain direct

---

[5] *See* 11 U.S.C. § 1322(b)(5) ("[N]otwithstanding paragraph (2) of this section . . .").

payments on long-term debt, but they may not unfairly discriminate against other unsecured

creditors.

The court next determines whether the treatment of the student loan debt in this case

constitutes unfair discrimination against the other unsecured creditors under § 1322(b)(1).

**II.     Unfair Discrimination under 11 U.S.C. § 1322(b)(1)**

The debtors have the burden of proving that that their proposed classification does not

unfairly discriminate against the other class of unsecured creditors. *In re Labib-Kiyarash*, 271

B.R. at 195.  In the Eighth Circuit, a proposed separate classification of an unsecured claim is not

unfair discrimination if: (1) the discrimination has a reasonable basis; (2) the debtor cannot carry

out a plan without the discrimination; (3) the discrimination is proposed in good faith; and (4) the

degree of discrimination is directly related to the basis or rationale for the discrimination. *In re*

*Leser*, 939 F.2d 669, 672 (8th Cir. 1991); *In re Copeland*, 742 F.3d at 813.

1. *Reasonable Basis for Discrimination*

Because nondischargeability by itself is not a reasonable basis for discrimination, courts

have found a reasonable basis other than nondischargeability when allowing separate treatment

of nondischargeable debt. *In re Copeland*, 742 F.3d at 814; *In re Groves*, 39 F.3d at 216; *In re*

*Sperna*, 173 B.R. 654, 658 (B.A.P. 9th Cir. 1994); *In re Bentley*, 250 B.R. 475, 478 (Bankr.

D.R.I. 2000) *aff'd,* 266 B.R. 229 (B.A.P. 1st Cir. 2001); *see also In re Crawford*, 324 F.3d 539,

543 (7th Cir. 2003) (listing examples of reasonable bases, such as separate classification of a

supplier of tools of trade necessary for the debtor's business or of a non-public utility that heats a

debtor's home); *see also In re Kalfayan*, 415 B.R. 907 (Bankr. S.D. Fla. 2009) (allowing

preferential treatment because defaulting on loans would result in loss of the debtor's medical

license); *see also In re Janssen*, 220 B.R. 639, 644 (Bankr. N.D. Iowa 1998) (finding that the

maintenance of a familial relationship is a reasonable basis for discrimination).

6

The debtors argue that the discrimination is appropriate here because, if the student loan debt was included with the other unsecured claims, the student loan debt would continue to grow despite the plan payments. The trustee responds that this is unlikely because the distributions are currently sufficient to pay accruing interest based on the filed claims. The debtors admitted this at the hearing. In *In re Martellaro*, the court held that a debtor needs to provide evidence of "significant economic harm other than the accrual of interest and a large nondischargeable debt at the end of the [p]lan term" to prove a reasonable basis for discrimination. 404 B.R. 548, 558 (Bankr. D. Mont. 2008). Here, the debtors fail to provide any evidence of significant economic harms besides the potential for accrued interest and fees.

Finally, the debtors argue that not allowing the discriminatory treatment would impede their fresh start. The court disagrees. A debtor's interest in a "fresh start" is not a sufficient basis to justify discrimination under § 1322(b)(1) by itself, rather, the interests of creditors must also be considered. *In re Groves*, 39 F.3d at 216; *In re Birts*, No. 12-CV-427, 2012 WL 3150384, *4 (E.D. Va. Aug. 1, 2012). There is no requirement that a debtor emerge from the bankruptcy process debt free because, under the bankruptcy code, many different obligations on long-term debt survive the process. *In re Sperna*, 173 B.R. at 659. Moreover, here, the debtors would receive a fresh start because, after paying $58,256.50 under the plan, the remaining $93,691.50 of general unsecured debt would be discharged, even without the separate treatment of the student loan debt. Thus, the debtors' "fresh start" argument is without merit.

The debtors have failed to establish that the discrimination is reasonable; the first prong of the *Leser* analysis is, therefore, not satisfied.[6]

---

[6] The debtors argue extensively in their briefs that § 1322(b)(5) by itself provides a reasonable basis for the proposed discrimination. The debtors did not provide any case law in support of this argument. One court has stated that "there are effectively no published opinions holding that a proposed discrimination in favor of student loans classified under § 1322(b)(5) is, *ipse dixit,*

2. *Necessity of the Discrimination*

The debtors admit that combining the student loan debt with the other unsecured claims creates a confirmable and feasible plan. Both parties agree that the debtors cannot satisfy the second element of the *Leser* test.

3. *Good Faith*

When determining if a debtor acted in good faith in proposing the discriminatory treatment, courts must examine different factors, such as "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987).

The debtors contend that they have proposed the plan in good faith because they acted in accordance with established precedent, citing *Groves* and *Benner*. This opinion is the first to analyze the interplay between §§ 1322(b)(1) and (b)(5) in this district since *Benner*. Therefore, the court agrees with the debtors.

The trustee argues that the debtors' actions prior to the conversion of their case indicate bad faith. The court disagrees. The trustee does not provide evidence that the debtors acted in bad faith in proposing the plan.

Based on the evidence before the court, the debtors do satisfy the third element of the *Leser* test.

4. *Degree of Discrimination*

The first and second factors of the *Leser* test are closely related to the final factor of degree of discrimination. Some courts have found that the final factor is inapplicable if there is

---

"fair" under § 1322(b)(1)." *In re Pora*, 353 B.R. at 253. This court agrees. The debtor's argument fails.

no reasonable basis for the discrimination under the first *Leser* element.  *In re Lilley*, No. 10-01079, 2010 WL 5462519, *4 (Bankr. N.D. Iowa Dec. 29, 2010).  Other courts have determined that, if the discrimination is unnecessary under the second factor, then the court should not make a finding regarding the proportionality of the discrimination under the fourth factor.  *In re Sperna*, 173 B.R. at 660.

Here, the debtors did not provide a reasonable basis for the discrimination under the first prong and the debtors admitted that the discrimination was not necessary under the second prong.  Therefore, this final factor is inapplicable.[7]

Based on the evidence before the court, the debtors' separate classification of the student loan debt constitutes unfair discrimination under § 1322(b)(1).  Confirmation of the debtors' plan is denied.

### III.    Interest Payments under 11 U.S.C. § 1322(b)(10)

Because the debtors failed to satisfy the unfair discrimination test under § 1322(b)(5) and confirmation of the plan is denied, the court will not address the parties' arguments regarding § 1322(b)(10).

### CONCLUSION

Section 1322(b)(1) applies to section 1322(b)(5), requiring any classification for the purpose of curing or maintaining payments to satisfy the unfair discrimination standard found in § 1322(b)(1).  Here, the debtors failed to provide sufficient evidence to prove that the discrimination found in their plan was fair.  Consequently, the court cannot confirm the debtors' plan because it violates section 1322(b)(1).

---

[7] If this factor did apply, the court would find the discrimination to be disproportional because the debtors' plan proposes to pay student loan creditors 52% of their claims and unsecured creditors 6-11% of their claims.

**IT IS ORDERED:**

1. The chapter 13 trustee's motion is granted.

2. Confirmation of the debtors' chapter 13 plan is denied.

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge